CANERDY *v.* PORT HURON, ST. CLAIR & MARINE CITY
RAILWAY CO.

1. STREET RAILROADS — BACKING CARS ACROSS STREET — INJURY
TO PEDESTRIAN — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE —
QUESTIONS FOR JURY.

Plaintiff's decedent, while crossing a street, was killed by
being struck by defendant's car which was being backed
from a switch to its waiting room.   At the time he started
to cross the street, the car was standing still and headed in
the opposite direction, as indicated by a red light upon the
rear end of the car.   The testimony warranted the inference
that his stepping upon the track and the starting of the car
were practically contemporaneous, and  that the sudden
starting of the car caused him to slip and fall, and that ex-
cept for such slipping he could have crossed in safety.   *Held*,
that the questions of defendant's negligence and the contrib-
utory negligence of plaintiff's decedent were properly sub-
mitted to the jury.

2. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment which, in effect, is that the court erred in not
directing a verdict, is not sufficiently specific to require con-
sideration.

Error to Macomb; Law, J., presiding.   Submitted Jan-
uary 7, 1909.   (Docket No. 4.)   Decided April 6, 1909.

Case by Alice M. Canerdy, administratrix of the estate
of John D. Canerdy, deceased, against the Port Huron,
St. Clair & Marine City Railway Company for the negli-
gent killing of plaintiff's decedent.   There was judgment
for plaintiff, and defendant brings error.   Affirmed.

*Phillips & Jenks* (*James G. Tucker*, of counsel), for
appellant.

*Cady & Crandall*, for appellee.

BLAIR, C. J.   Plaintiff brought this suit to recover

damages for loss of means of support and pecuniary injuries occasioned by the death of her husband through the alleged negligence of defendant.  Immediately prior to the accident an electric car of defendant stood upon the west, or south-bound, of its two tracks upon Military street in Port Huron, about 30 feet from the south line of Pine street and just south of a switch point.  Military street runs north and south, and is intersected by Pine street nearly at right angles.  The car was headed south, was lighted inside, and had a red light on the rear, or, as it stood, north, end; it being the intention of defendant's employés to back the car north on Military street to its waiting room.  The accident occurred at about 6 :30 p. m., February 3, 1906.  There was no street light at the place in question, the night was rough, windy, cold, and squally, and there was about half an inch of snow on the ground. The conductor of the car, having thrown the switch, got upon the car at the rear end, and started forward; the car was started, and while he was still walking forward, the cries of plaintiff's decedent were heard, and the car was stopped near the north line of Pine street.  A passenger testified :  ''When the car started back, it started at pretty good speed.''  An examination the next morning disclosed ''blood all the way across Pine street.  It began about 3 feet from what would be the north edge of the sidewalk line on the south side of Pine street if the sidewalk was continued.  *  *  *  This blood was all on the east rail of the west track.''  Ella Higgins, one of the two witnesses who saw the accident, testified :

''The car had started south, and I thought it was going to the barns, or going down to Detroit, so I thought I would take the car, and went over towards it.  Just as I got about the middle of Pine and Military, it started to back up, and I stood still there for a minute.

''Q.  Did you see a man go across the street ?

''A.  I saw a man going; I was watching the car, but I glanced from the car to the end of it, and saw a man coming.  He tripped, I thought, and then the car struck him.  I thought he slipped, something like that.  It is so

long ago I have kind of forgotten. I don't remember
very much about it now. It seems to me he glanced
back. It was all done in an instant. He sort of slipped,
and before he could recover himself, the car struck him,
as near as I can remember. As he was struck, he shouted,
and I ran down Military street with my hands to my ears.
He said ' Oh, Oh ' quite a few times, it seems to me. * * *
The man that I saw that was struck was coming from the
east side toward the west.

"*Q.* Did you say he turned and looked back and slipped ?

"*A.* Why, he looked that way as he came towards the
car.

"*Q.* He looked towards the car ?

"*A.* Yes, that way.

"*Q.* And as he was coming towards the car he was
looking towards the car ?

"*A.* Yes, sir.

"*Q.* And as he got close to it, he slipped, you say ?

"*A.* As he got on the track he slipped, and the car
backed down on him before he could recover himself, as
near as I can remember. * * *

"*Q.* Mrs. Higgins, at the time you saw Mr. Canerdy
step onto the track, ahead of the car, can you give us any
idea how far the car was from him ?

"*A.* Well, I should imagine it would be about as far
as from here to the table. I can't say positively, but in
my mind, that is the way I think it is; it happened so
suddenly that I—

" Cross-examination.

"*Q.* That would be a distance somewhere about 8 to
12 feet ?

"*A.* I should say so; yes, sir."

There was testimony in behalf of defendant tending to
show that the conductor was on the rear platform at the
time of the accident, and also that the gong was sounded
when the car was started. The testimony for plaintiff
tended to controvert both these points. At the conclusion
of plaintiff's case, defendant moved for an instructed ver-
dict on the ground that plaintiff's decedent was guilty of
contributory negligence. At the conclusion of the case,
defendant presented several requests to charge, all of
which required the direction of a verdict for defendant.
The court submitted the case to the jury, who found a ver-

dict for plaintiff, and defendant brings the record to this court for review upon writ of error.

Under the circumstances, the question whether the defendant was negligent in suddenly backing the car without ringing the gong or having a lookout on the rear platform was properly submitted to the jury. *Smith* v. *Railroad Co.*, 136 Mich. 224; *Schremms* v. *Railroad Co.*, 145 Mich. 190. The main question in the case presented by defendant's assignments of error and the brief is whether the plaintiff's decedent was not guilty of contributory negligence, as a matter of law. We think this question, also, was properly submitted to the jury. The car was standing still upon the south-bound track, and headed south, as indicated by the red light upon the rear end. It remained standing during a portion of the time, at least while decedent was approaching the track, and we are of the opinion that the testimony warrants the inference that Mr. Canerdy's stepping upon the track and the starting of the car were practically contemporaneous, that the sudden approach of the car caused him to slip and fall, and that except for such slipping he could have crossed in safety. The jury were not bound by Mrs. Higgins' estimate of the distance separating Canerdy and the car when he stepped upon the track. Since he was between her and the approaching car, and the only light came from the car itself, her estimate of distance must necessarily be very unreliable, and in fact little more than a guess. The time required for the car to run less than its own length, at "a pretty good rate of speed," would be so short that the jury might well find that it started at about the same time that Mr. Canerdy stepped upon the track, and ran him down because he was unable to recover himself in time after slipping. Whether Mr. Canerdy was justified in attempting to cross the track, under the surrounding conditions, was a question for the jury, and not for the court. *McQuisten* v. *Railway Co.*, 147 Mich. 67; *Chauvin* v. *Railway*, 135 Mich. 85; *Edwards* v. *Foote*, 129 Mich. 121; *Fehnrich* v. *Railroad Co.*, 87 Mich. 606.

Another question is presented by the brief for defendant, which "arises from the testimony showing the place where, and the condition in which, the body was found, and the testimony given in connection therewith, to the effect that it was impossible for the body to have been found in the condition in which it was if the deceased had gotten under the rear end of the car as it backed down." Upon this subject, the court instructed the jury, as follows:

"You should also consider and determine what part of the car Mr. Canerdy first came in contact with, and how he came to be in the position in which he was found under the car. In this connection the court says to you that the defendant claims the deceased was not struck by the front end of the car, but that he came up to the side of the car and slipped, and then in some manner slid under the space between the forward and rear trucks of the car. It is your province to determine the reasonableness or unreasonableness, the truth or falsity, of this theory in the light of all the evidence, facts, and circumstances. If you find that Mr. Canerdy came to his death in this way—that is, by slipping under the side of the car—then the court says to you there can be no recovery here by this administratrix, for then his death was caused, either by his own negligence, for which he only was responsible, or by an accident for which no one is responsible."

No exception was taken to this portion of the charge, nor is there any assignment of error based specifically thereon. The only assignment which could possibly cover the subject is the third, viz. :

"The court erred in refusing to instruct the jury, as requested in defendant's first request to charge."

The first request to charge was as follows:

"Under the pleading and proofs in this case, the defendant is entitled to your verdict."

The third assignment of error was, in effect, therefore, that the court erred in refusing to direct a verdict for defendant. Such an assignment is not sufficiently specific to require consideration. *Jackson Bridge & Iron Co.* v.

*Insurance Co.*, 122 Mich. 433; *Wolfe* v. *Stack*, 153 Mich. 445.

There are no other questions which, in our opinion, require discussion.

The judgment is affirmed.

GRANT, HOOKER, MOORE, and MCALVAY, JJ., concurred.